1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SWEELEY, | Case No. 1:23-cv-01209-EPG |
| Plaintiff, | FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 1, 14). |
| Defendant. | |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

Plaintiff argues as follows:

1. The ALJ prejudiced the RFC assessment by erroneously rejecting medical opinions from psychologists Sara Bowerman, PhD and Thomas Maples, PhD.

2. The ALJ's reasoning in rejecting Mr. Burkan's testimony is illogical and not supported by substantial evidence.

1   (ECF No. 14, pp. 5, 11).

2       Having reviewed the record, administrative transcript, parties' briefs,[1] and the applicable

3   law, the Court finds as follows.

4   **I.      ANALYSIS**

5       **A.      RFC**

6       Plaintiff first challenges the ALJ's formulation of the following RFC:

7       After careful consideration of the entire record, the undersigned finds that the
        claimant has the residual functional capacity to perform a full range of work at all
8       exertional levels but with the following nonexertional limitations: is limited to
        understanding, remembering and carrying out simple routine and repetitive tasks,
9       using judgment limited to simple work related decisions and is capable of
10      interacting with and coworkers and the public occasionally.

11  (A.R. 21).

12      A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20

13  C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2,

14  § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the

15  capacity for sustained performance of the physical-mental requirements of jobs"). "In

16  determining a claimant's RFC, an ALJ must consider all relevant evidence in the record,

17  including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain,

18  that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec.*

19  *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In

20  reviewing findings of fact with respect to RFC assessments, this Court determines whether the

21  decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means

22  "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a

23  preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such

24  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

25  *Richardson*, 402 U.S. at 401 (internal citation omitted).

26      Plaintiff argues that the RFC is deficient because the ALJ "erroneously reject[ed] medical

27  _____

28  [1] Plaintiff's reply brief was filed about a week late under the scheduling order; however, the Court has still
    considered it. (ECF Nos. 6, 17).

1  opinions from psychologists Sara Bowerman, PhD and Thomas Maples, PhD." (ECF No. 14, p.

2  5).

3            **1.**      **Dr. Bowerman**

4       Starting with Dr. Bowerman's opinion, the ALJ deemed it persuasive:

5       At the request of this Agency, the claimant underwent a psychological evaluation
   on February 22, 2021, with Sara Bowerman Ph.D. wherein the doctor diagnosed
6  an Attention Deficit Hyperactivity Disorder, Autism Spectrum Disorder,
   Generalized Anxiety Disorder, and Borderline Intellectual Functioning. Dr.
7  Bowerman opined the claimant had mild impairment in his ability to understand,
   remember, and carry out simple one or two-step job instructions and ability to
8  maintain concentration, attention, and for pacing, tracking, and scanning. The
   claimant has moderate limitations in his ability to understand, remember, and carry
9  out detailed, but uncomplicated, job instructions; *ability to respond appropriately*
10 *to co-workers and supervisors and the public; ability to respond appropriately to*
   *usual work situations (attendance, safety, etc.); ability to deal with changes in a*
11 *routine work setting*; and neurodevelopmental and anxiety disorders moderately
   impair his ability to interact with others in socially acceptable ways. Further, Dr.
12 Bowerman opined the claimant had marked limitations in his ability to understand,
   remember, and carry out an extensive variety of technical and/or complex job
13 instructions (Exhibit 8F).

14      The opinion of Dr. Bowerman is persuasive as overall it is consistent with, and
15 supported by, evidence in the record, as well as examination of the claimant.

16 (A.R. 27) (emphasis added).

17      Plaintiff argues that, despite finding Bowerman's opinion persuasive, the ALJ failed "to

18 explain how Dr. Bowerman's limitations in attendance, workplace safety, interactions with

19 supervisors, and dealing with routine workplace changes are included in the RFC or why they are

20 excluded." (ECF No. 14, p. 8). Defendant argues that "Dr. Bowerman's opinion of moderate

21 limitations . . . tracked with" those of Dr. Colsky, who reviewed the record at the request of the

22 Agency, and purportedly issued a "similar opinion of moderate limitations." (ECF No. 16, p. 4).

23 Noting that the ALJ also deemed Dr. Colsky's opinion persuasive, Defendant argues that, because

24 Dr. Colsky considered Dr. Bowerman's opinion and offered similar limitations and "Dr. Colsky's

25 findings were captured by the RFC," the ALJ effectively incorporated Dr. Bowerman's opinion in

26 the RFC. (*Id.* at 5).

27      Upon review, the Court concludes that Plaintiff has the more persuasive argument.

28

1   Importantly, the Court disagrees with Defendant's contention that Dr. Bowerman's opinion

2   "tracked with Dr. Colsky's similar opinion of moderate limitations." (*Id.* at 4).

3        True, the opinions were similar in some ways. For example, both Doctors opined that

4   Plaintiff was moderately impaired in responding to changes in the work setting.  Accordingly, the

5   Court rejects Plaintiff's argument as to this limitation. (A.R. 100, 543). However, while Dr.

6   Bowerman opined that Plaintiff would be moderately impaired in responding to normal work

7   situations, including attendance and safety (A.R. 543), Dr. Colsky opined that Plaintiff would not

8   be significantly limited in maintaining regular attendance or significantly limited in being aware

9   of normal hazards and taking appropriate precautions (A.R. 98-100). Similarly, while Dr.

10  Bowerman opined that Plaintiff was moderately impaired in his ability to respond to supervisors

11  (A.R. 543), Dr. Colsky opined that he was not significantly limited in his ability to accept

12  instructions and respond appropriately to criticism from supervisors (A.R. 100). Accordingly, the

13  opinions did not materially track in such a way that the Court can reasonably infer that the ALJ

14  accounted for Dr. Bowerman's opinions regarding attendance, safety, and responding to

15  supervisors by simply incorporating part of Dr. Colsky's opinion in the RFC.

16       Moreover, although one court has recently noted that there is a "split" on this issue, the

17  caselaw "tends to favor the view that a restriction to simple/routine tasks with limited public

18  contact does not account for the moderate limitations [of] . . . maintaining regular attendance[]

19  and completing a normal workweek without interruption." *Harrell v. Kijakazi*, No. 1:20-CV-

20  00614-GSA, 2021 WL 4429416, at *6 (E.D. Cal. Sept. 27, 2021) (collecting cases); *see also*

21  *Berenisia Madrigal v. Saul*, No. 1:18-CV-01129-SKO, 2020 WL 58289, at *5 (E.D. Cal. Jan. 6,

22  2020) (concluding that limitation to simple, routine tasks with limited peer and public contact did

23  not account for "moderate limitations completing a normal workday or work week due to her

24  psychiatric condition, moderate difficulties dealing with stress and changes encountered in the

25  workplace, and an up to moderate likelihood that she would emotionally deteriorate in a work

26  environment"). This is because a limitation to simple and repetitive tasks addresses

27  "concentration, attention, persistence, or pace" but would not adequately account for "Plaintiff's

28  ability to . . . maintain regular attendance in the workplace and perform work activities on a

1  consistent basis . . . ." *Donna M. v. Saul*, No. 19-CV-03134-DMR, 2020 WL 6415601, at *4

2  (N.D. Cal. Nov. 2, 2020).

3      The ALJ had no duty to credit Dr. Bowerman's opinion, but once the ALJ did, "the ALJ

4  was under an obligation to account for [the moderate limitations assessed] irrespective of the

5  broader reasoning in support of the RFC." *Harrell*, 2021 WL 4429416, at *4. Because the ALJ

6  failed to properly address Plaintiff's moderate limitations in handling usual work situations, like

7  attendance and safety issues, and in responding appropriately to supervisors, the RFC is not

8  supported by substantial evidence.

9          **2.    Dr. Maples**

10     Turning to Dr. Maples' opinion, the ALJ concluded that it was not persuasive:

11  Thomas Maples Ph.D. submitted a Medical Source Statement of Ability to do
12  Work-Related Activities (Mental) dated May 26, 2022, wherein Dr. Maples opined
    the claimant had extreme limitations in the following: carry out short, simple
13  instructions; carry out detailed instructions; ability to make judgments on simple
    work-related decisions; interact appropriately with the public, supervisors and co-
14  workers; respond appropriately to work pressures in a usual work setting; and
    respond appropriately to changes in a routine work setting. Dr. Maples noted the
15  claimant has severe relational difficulties with extreme problems with caring for
16  Activities of Daily living. He will have difficulties relating with peers and
    supervisors. He will have difficulty with remembering and attending to activities
17  of daily living and will make others around him uncomfortable. It was further
    opined the claimant was unable to manage benefits in his own best interest. The
18  onset of these limitations was June 12, 2021 (Exhibit 10F).

19  Dr. Maples performed an examination of the claimant on June 12, 2021, wherein
20  Dr. Maples diagnosed the claimant with an Autism Spectrum Disorder. Dr. Maples
    opined the claimant will not respond to mental health treatment. He will have
21  severe difficulties functioning in a typical work setting. He will be isolated
    amongst colleagues or peers. His isolative social tendencies will pose problems in
22  a work environment. His limited degree of personal interests, obsessive focus, and
    severe difficulties formulating areas of self-reflection will impede his ability to
23  attend timely to job expectations. He should be appointed a representative payee,
24  at a minimum. His lack of attendance to opening mail and paying bills in the past
    shows he requires assistance with this area of functioning (Exhibit 9F).
25
    The opinion of Dr. Maples is not persuasive as it is overall inconsistent with
26  evidence in the record and is not based upon review of the claimant's most recent
    treatment records. Additionally, it appears the opinion is based in part upon
27  statements of Mr. Burkan which are inconsistent overall with the evidence in the
    record. The opinion is not supported by the evidence showing the claimant has not
28

                                    5

required mental health treatment, outside of medication management for his ADHD, or other mental health support services. Additionally, the record reveals the claimant is independent in his living. He is able to drive, care for his animals, work using complex machinery, manage his finances, prepare his meals, shop, perform household chores, maintain relationships with others, and seek out assistance when necessary. Additionally, the record reveals the claimant presents for treatment with normal mental status findings including his ability to get along and communicate with his providers. He is able to work for, and with others. He provides reliable histories when requested, both orally and in writing. Furthermore, the opinion is inconsistent with the following observations and findings noted by Dr. Maples in the opinion.

Dr. Maples conducted a clinical interview with the claimant on May 27, 2021. Dr. Maples noted the claimant was oriented, appeared to have above-average intelligence. The claimant reported feeling good. The claimant reported he lacks social relationships, stating he prefers to be alone and relates well with his pets.

Dr. Maples noted the claimant presented as oriented with good memory. His speech was a normal rate, but he had poor eye contact, and robotic in speech tone.

The claimant reported problems adjusting to significant life stressors (death of his father), somatic complaints, and underlying fears. However, he reported he is very content to live with his animals and shows no evidence of seeking social relationships with people.

It was noted the claimant reported addictive and impulsive behaviors such as hand washing and mild difficulties around wine consumption. He denied delusional and manic behaviors.

(A.R. 29-30).

Plaintiff argues that the ALJ ignored evidence that Dr. Maples used to support his opinion, including results from "the detailed clinical examination he performed on Plaintiff in June 2021," such as findings that Plaintiff had a dirty appearance, had poor insight, and sometimes behaved in a childlike manner. (ECF No. 14, p. 9). Defendant emphasizes that Plaintiff's argument only addresses the supportability of Dr. Maples' opinion, while ignoring all the reasons the ALJ gave to conclude that it was inconsistent with the record, but, in any event, the ALJ gave sufficient reasoning to conclude that Dr. Maples' opinion was not entirely supported. (ECF No. 16, pp. 9-10).

Because Plaintiff applied for benefits in 2020, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (A.R. 15). These regulations set "supportability" and

1    "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20

2    C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician

3    hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a

4    medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions"

5    and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-

6    (b); 416.920c(a)-(b).

7         As for the case authority preceding the new regulations that required an ALJ to provide

8    clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the

9    Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

10        The revised social security regulations are clearly irreconcilable with our caselaw
          according special deference to the opinions of treating and examining physicians
11        on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a)
          ("We will not defer or give any specific evidentiary weight, including controlling
12        weight, to any medical opinion(s) . . ., including those from your medical
          sources."). Our requirement that ALJs provide "specific and legitimate reasons"
13        for rejecting a treating or examining doctor's opinion, which stems from the
          special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise
14        incompatible with the revised regulations. Insisting that ALJs provide a more
          robust explanation when discrediting evidence from certain sources necessarily
15        favors the evidence from those sources—contrary to the revised regulations.
16

17   *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

18        Accordingly, under the new regulations, "the decision to discredit any medical opinion,

19   must simply be supported by substantial evidence." *Id.* at 787.

20        In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive'

21   it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b),

22   and 'explain how [it] considered the supportability and consistency factors' in reaching these

23   findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

24        Supportability means the extent to which a medical source supports the medical
          opinion by explaining the "relevant . . . objective medical evidence. *Id.*
25        § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is
          "consistent . . . with the evidence from other medical sources and nonmedical
26        sources in the claim. *Id.* § 404.1520c(c)(2).
27   *Id.* at 791-92.

28

With these standards in mind, the Court finds no error. As an initial matter, as Defendant points out, Plaintiff glosses over the fact that the ALJ gave a robust consistency analysis to reject Dr. Maples' opinion. Among other things, the ALJ concluded that Dr. Maples' extreme limitations were inconsistent with record evidence cited elsewhere in the opinion, including "normal mental status findings," reports of Plaintiff "feeling okay," and Plaintiff's ability to "carry on a coherent conversation." (A.R. 25).

As to supportability, the ALJ reasonably concluded that some of Dr. Maples' own observations did not support his extreme limitations. Among other things, the ALJ pointed to notations that Plaintiff was oriented, had above-average intelligence, reported feeling good, and had good memory. While Plaintiff identifies other findings by Dr. Maples to support his disability argument, the ALJ's interpretation of the evidence to discount the opinion, especially that relating to the consistency factor, was rational. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Moreover, to the extent that Plaintiff argues that the ALJ failed to note certain findings that Dr. Maples used to support the opinion, an "ALJ does not need to discuss every piece of evidence," and the Court concludes that the ALJ's lengthy discussion of Dr. Maples' opinion demonstrates that the ALJ properly considered the evidence. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal citation and quotation marks omitted).

In conclusion, the ALJ did not error in discounting Dr. Maples' opinions and failing to incorporate them in the RFC.

### B.    Lay Testimony

Plaintiff also argues that the ALJ erred by failing to articulate sufficient reasons to reject the lay testimony Mr. Burkan, a family friend who assisted Plaintiff with some daily activities. (ECF No. 14, p. 12). Defendant argues that Mr. Burkan's testimony largely tracked Plaintiff's testimony and the ALJ supplied sufficient reasons to reject both. (ECF No. 16, p. 11).

On this issue, the ALJ concluded as follows:
Bruce Burkan, a friend of the claimant, submitted several Third Party Function

report forms. The first is dated February 10, 2020, is consistent with the above statements of the claimant and indicates that he spends two to three hours a week with the claimant during which they would pay bills and go on a day hike. He reported that the claimant feeds and milks goats. Mr. Burkan alleges that the claimant's habits since the death of his father have changed. For example, he attempted to burn his house down three years ago. Mr. Burkan did not observe any limitations in understanding, recalling information, using his hands, and completing tasks. It was noted the claimant gets confused and begins to stutter so bad that he can barely speak. Further, it was noted the claimant avoids people whenever possible and acts inappropriate (Exhibit 1E).

Mr. Burkan submitted a more recent Third Party Function Report form dated March 28, 2020, that is consistent with statements of the claimant, as well as Mr. Burkan's statement above, with the exception that he reported the claimant cares for five goats, makes house repairs, and gathers firewood. He is inattentive to his hygiene (Exhibit 7E).

In another, more recent form dated February 5, 2021, Mr. Burkan stated he was spending a few hours a month with the claimant during which the claimant helps him with yard work. He reported the claimant spends an average day at home with his goats, cutting wood on his property and doing jobs around the house. In the past he was fired or laid off from a job as a college instructor because he refused to attend meetings at the college and refused to submit lesson plans (Exhibit 13E).

Additionally, Mr. Burkan submitted a letter dated April 6, 2022--which is consistent with Mr. Burkan's prior statements above--with the exception that he clarified an earlier statement referencing the claimant's burning his [claimant's] house down--stating that it was an accident. Additionally, as a college instructor, he would sometimes fail to phone the school when he felt like staying home and was fired from prior jobs. The claimant's father had been helping him with bills and appointments, and since his father's passin[]g Mr. Burkan discovered that for the past four years the claimant has not opened any mail or paid any bills. Mr. Burkan had reached out to county mental health services regarding a conservatorship and reportedly was told this could be done only after he has income from SSI. Therefore Mr. Burkan has been informally "acting has his conservator" (Exhibit 27E).

Mr. Burkan testified that he has known the claimant his entire life as the claimant's parents were his best friends. The claimant will help him with clearing his four-acre parcel, maybe twice a month, and is paid $100.00 for this work. The claimant drives a half hour, each way, to Mr. Burkan's house when he does this work. Mr. Burkan stated sometimes the claimant does not show up, call, or answer his phone. Mr. Burkan makes sure the claimant attends appointments, opens his mail, and pays his bills. Mr. Burkan testified the claimant has difficulty distinguishing appropriate behaviors from inappropriate behaviors, has poor hygiene and sleeps with his goats (Hearing testimony).

. . . .

> The statements and testimony of Mr. Burkan are not persuasive as they are inconsistent with the evidence in the record. This includes the claimant's mental health treatment records, daily activities, and objective clinical testing upon examination. However, the statements and testimony were considered in determining the severity of the claimant's impairments, as well as the findings herein.

(A.R. 22-23, 25).

As an initial matter, the Court notes that there is caselaw indicating that an ALJ need not articulate the reasons to discount lay witness statements under the revised regulations. *See Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) ("It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions."); *Neri v. Comm'r of Soc. Sec.*, No. 1:21-CV-01235-SAB, 2022 WL 16856160, at *7 (E.D. Cal. Nov. 10, 2022) (opining that, under the revised regulations, an ALJ must consider, but not necessarily articulate how the ALJ considered lay testimony, and concluding that, in any event, the result would be the same if the germane-reasons standard applied).

Ultimately, the Court need not resolve this dispute. Importantly, courts have declined to reverse on this issue where an ALJ provided clear and convincing reasons to reject a Plaintiff's complaints, where such complaints were similar to the lay testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

Here, the lay witness statements at issue were similar to Plaintiff's own complaints about his symptoms and limitations. (*See* A.R. 22, noting Mr. Burkan's statements were "consistent" with Plaintiff's statements). The ALJ discounted Plaintiff's testimony of disabling symptoms (which Plaintiff does not challenge) because (1) he engaged in somewhat normal levels of daily activities and interaction, including living alone, preparing meals, and working parttime; (2) he completed the necessary disability forms and did so with attention to detail; (3) he had normal or

1  unremarkable mental status examinations; and (4) some of his "mental abilities and social

2  interactions required in order to perform . . . activities are the same as those necessary for

3  obtaining and maintaining employment." (A.R. 24).

4        The ALJ reasonably referenced this earlier discussion when discounting Mr. Burkan's

5  testimony as the testimony was inconsistent with Plaintiff's "mental health treatment records,

6  daily activities, and objective clinical testing." (A.R. 25); *see Ghanim v. Colvin*, 763 F.3d 1154,

7  1162 (9th Cir. 2014) (noting that a conflict between daily activities and medical opinion may

8  justify discounting medical opinion); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

9  1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the

10  claimant's subjective testimony."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)

11  ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully

12  corroborated by objective medical evidence, the medical evidence is still a relevant factor in

13  determining the severity of the claimant's pain and its disabling effects.").

14        Because the ALJ provided sufficient reasons to reject Plaintiff's complaints, the opinion

15  was likewise sufficient to discount Mr. Burkan's statements.

16        **C.**    **Remedy**

17        Plaintiff contends that the Court should remand this case to the Agency for the payment of

18  benefits, or, in the alternative, the Court should remand this case for a new hearing. (ECF No. 14,

19  p. 14). Defendant argues that Plaintiff has provided no developed argument for an award of

20  benefits, and this Court should affirm in any event. (ECF No. 16, p. 13).

21        The decision whether to remand for further proceedings or for immediate payment of

22  benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.

23  2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test,

24  with each of the following parts of the test needing to be satisfied to remand for benefits:

25      (1) the record has been fully developed and further administrative proceedings
    would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient

26      reasons for rejecting evidence, whether claimant testimony or medical opinion;
    and (3) if the improperly discredited evidence were credited as true, the ALJ

27      would be required to find the claimant disabled on remand.

28

1   *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, even if all these parts are met,

2   the Court may still remand when "an evaluation of the record as a whole creates serious doubt

3   that a claimant is, in fact, disabled." *Id.* at 1021. Notably, remand for further proceedings is the

4   "ordinary" requirement whereas a remand for payment of benefits is the rare exception. *See*

5   *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

6          Plaintiff offers no developed argument as to why an award of benefits is appropriate here,

7   and after review of the record as whole, the Court concludes that a remand for further proceedings

8   is warranted. Notably, further proceedings would be useful to account for the moderate

9   limitations in Plaintiff's mental abilities and to formulate an appropriate RFC.

10  **II.      CONCLUSION AND ORDER**

11         Accordingly, the decision of the Commissioner of the Social Security Administration is

12  REVERSED and REMANDED, in part, for further administrative proceedings consistent with

13  this decision. Specifically, the ALJ is directed to account for the moderate limitations opined by

14  Dr. Bowerman when formulating the RFC. On all other issues, the decision is affirmed. The Clerk

15  is directed to enter judgment in favor of Plaintiff and against Defendant.

16
17  IT IS SO ORDERED.

18      Dated:   **March 28, 2024**                     /s/ *Erica P. Grosjean*
19                                                      UNITED STATES MAGISTRATE JUDGE

20
21
22
23
24
25
26
27
28